Sharon D. Cousineau
SAMWEL COUSINEAU, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PENDLETON DIVISION**

| | |
|---|---|
| JOSHUA NUTT, and <br> ERIN NUTT, <br><br> Plaintiffs, <br><br> v. <br><br> HALSTED FINANCIAL SERVICES, LLC, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:19-cv-499 <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' COMPLAINT**

Plaintiff, JOSHUA NUTT and ERIN NUTT ("Plaintiffs"), by and through their attorney, Sharon D. Cousineau, allege the following against Defendant, HALSTED FINANCIAL SERVICES, LLC ("Defendant"):

**INTRODUCTION**

1. Count I of Plaintiffs' Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

2. Count II of Plaintiffs' Complaint is based on the Telephone Consumer Protection Act., 47 U.S.C. § 227, et seq. ("TCPA").

## JURISDICTION AND VENUE

3. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 15 U.S.C. § 1692k (FDCPA).

4. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

5. This court has federal question jurisdiction because this case arises out of violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

6. Venue and personal jurisdiction in this district are proper because Defendant does or transacts business within this district, and a material portion of the events at issue occurred in this district.

## PARTIES

7. Plaintiffs are natural persons residing in the City of Hermiston, Umatilla County, State of Oregon.

8. Plaintiffs are consumers as that term is defined by 15 U.S.C. § 1692a(3).

9. Plaintiffs allegedly owe a debt as that term is defined by 15 U.S.C. § 1692a(5).

10. Defendant is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

11. Within the last year, Defendant attempted to collect a consumer debt from Plaintiffs.

12. Plaintiffs are, and at all times mentioned herein, persons as that term is defined by 47 U.S.C. § 153(39).

13. Defendant is, and at all times mentioned herein, a person, as that term is defined by 47 U.S.C. § 153(39).

14. Defendant is an Illinois limited liability company and national debt collection agency

headquartered in the City of Skokie, Cook County, Illinois.

15. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

16. When an unpaid, outstanding account is placed with Defendant it is assigned a reference number.

17. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

18. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

19. During the course of its attempts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

20. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

21. Defendant is attempting to collect a consumer debt from Plaintiffs, allegedly owed by Plaintiffs.

22. The alleged debt at issue arises from transactions for personal, family, and household purposes.

23. In or around February 2019, Defendant began placing collection calls to Plaintiff, Joshua on his cellphone number of xxx-xxx-3570 in an attempt to collect the alleged debt.

24. In or around February 2019, Defendant began placing collection calls to Plaintiff, Erin on her cellphone number of xxx-xxx-1820 in an attempt to collect the alleged debt.

25. Defendant calls Plaintiffs from several telephone numbers, including 402-856-0945, which is one of Defendant's telephone numbers.

26. On or about February 20, 2019, Plaintiff, Erin returned one of Defendant's missed collection calls and spoke to one of Defendant's collectors.

27. During the above-referenced telephone conversation, Plaintiff, Erin:

    a. Told Defendant's collector that the Plaintiffs dispute owing an alleged debt to LVNV Funding, LLC;

    b. Requested written verification of the alleged debt; and

    c. Told Defendant's collector to stop calling the Plaintiffs.

28. Despite being told by Plaintiff, Erin to stop calling Plaintiffs, Defendant continued to place collection calls to both Plaintiffs unabated.

29. Defendant has called Plaintiffs as early as 7:10 a.m. Pacific Standard Time.

30. The natural consequences of Defendant's actions were to unjustly condemn and vilify Plaintiffs for their non-payment of the alleged debt.

31. The natural consequences of Defendant's statements and actions were to produce an unpleasant and/or hostile situation between Defendant and Plaintiffs.

32. The natural consequences of Defendant's actions were to cause Plaintiffs mental distress

33. None of the calls Defendant made to Plaintiffs were for an emergency purpose.

34. All of the calls Defendants made to Plaintiffs' cellular telephones resulted in Plaintiffs incurring a charge for incoming calls.

35. During at least one conversation, Defendant learned that Plaintiffs wanted Defendant to stop calling Plaintiffs' cellular telephones.

36. Plaintiffs have never given to Defendant prior express consent to contact Plaintiffs as

described herein.

37. Even if at one point Defendant had prior express consent to call Plaintiffs' cellular telephones, Plaintiffs revoked this consent as described above.

38. Defendant continued to call Plaintiffs' cellular telephones after Defendant knew Plaintiffs wanted the calls to stop.

39. Within four (4) years of Plaintiffs filing this Complaint, Defendant used an ATDS to call Plaintiff's cellular telephone.

40. When Plaintiffs answered Defendant's calls, they were sometimes greeted with "dead air" whereby no person was on the other end of the line. After several seconds, an agent was connected to the automated call then greeted Plaintiffs and sought to speak with Plaintiffs in an attempt to collect an alleged debt.

41. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to store telephone numbers.

42. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call stored telephone numbers automatically.

43. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call stored telephone numbers without human intervention.

44. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call telephone numbers in sequential order.

45. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones has the capacity to call telephone numbers randomly.

46. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones selects telephone numbers to be called according to a protocol or strategy entered by Defendant.

47. The telephone dialer system Defendant used to call Plaintiffs' cellular telephones simultaneously calls multiple recipients.

48. The dead air that the Plaintiffs may have experienced on the calls that they received is indicative of the use of an ATDS.  This "dead air" is commonplace with autodialing and/or predictive dialing equipment.  It indicates and evidences that the algorithm(s) being used by Defendant's autodialing equipment to predict when the live human agents are available for the next call has not been perfected and/or has not been recently refreshed or updated.  Thus, resulting in the autodialer placing a call several seconds prior to the human agent's ability to end the current call he or she is on and be ready to accept the new connected call that the autodialer placed, without human intervention, to Plaintiffs.  The dead air is essentially the autodialer holding the calls it placed to Plaintiffs until the next available human agent is ready to accept them.  Should the calls at issue been manually dialed by a live human being, there would be no such dead air as the person dialing Plaintiffs' telephones would have been on the other end of the call the entire time and Plaintiffs would have been immediately greeted by said person.

49. Plaintiffs also received "abandoned calls" from the Defendant.

50. Abandoned calls occur when Defendant's automated system calls more customers than it has agents available, and as a result a customer who answers hears nothing but dead air until the call is terminated because the automated systems is unable to transfer the call it dialed to a human being.

51. As a result of Defendant's alleged violations of law by placing these automated calls to Plaintiffs' cellular telephones without prior express consent and/or after revocation of such consent, Defendant caused Plaintiffs harm and/or injury such that Article III standing is

satisfied in at least the following, if not more, ways:

  a. Invading Plaintiffs' privacy;
  b. Electronically intruding upon Plaintiffs' seclusion;
  c. Intrusion into Plaintiffs' use and enjoyment of their cellular telephones;
  d. Impermissibly occupying minutes, data, availability to answer another call, and various other intangible rights that Plaintiffs have as to complete ownership and use of their cellular telephones; and
  e. Causing Plaintiffs to expend needless time in receiving, answering, and attempting to dispose of Defendant's unwanted calls.

## COUNT I
## DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT

52. Claimant fully incorporates and re-alleges paragraphs one (1) through fifty-one (51) as if fully set forth herein under Count I of Plaintiffs' Complaint.

53. Defendant violated the FDCPA based on the following:

  a. Defendant violated § 1692c(a)(1) of the FDCPA by communicating with a consumer before 8 o'clock antemeridian, and after 9 o'clock postmeridian, local time at the consumer's location when Defendant called the Plaintiffs as early as 7:10 a.m. Pacific Standard Time;

  b. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse in connection with the collection of an alleged debt when Defendant continued to call Plaintiffs after being told not to;

  c. Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number when Defendant continued to call Plaintiffs after being told not to;

  d. Defendant violated § 1692e of the FDCPA by its use of any false, deceptive, or

     misleading representation or means in connection with the collection of any debt when Defendant created the false impression on Plaintiffs that Defendant was permitted by law to continue to call Plaintiffs with impunity despite Defendant being told to stop calling Plaintiffs;

e. Defendant violated § 1692e(10) of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt when Defendant created the false impression on Plaintiffs that Defendant was permitted by law to continue to call Plaintiffs with impunity despite Defendant being told to stop calling Plaintiff;

f. Defendant violated § 1692g(a)(3) of the FDCPA by ignoring Plaintiffs' oral dispute of the alleged debt and continuing to assume the validity of the alleged debt when Defendant ignored Plaintiffs' oral dispute of the alleged debt and continuing to call Plaintiffs thereafter;

g. Defendant violated § 1692g(b) of the FDCPA by engaging in collection activities and communication that overshadowed or was inconsistent with the disclosure of the consumer's right to dispute the debt when Defendant continued to place collection calls to Plaintiffs despite Plaintiffs' oral dispute of the alleged debt; and

h. Defendant violated § 1692f of the FDCPA by using unfair or unconscionable means in connection with the collection of an alleged debt when Defendant engaged in all the misconduct alleged herein.

    WHEREFORE, Plaintiffs, JOSHUA NUTT and ERIN NUTT, respectfully request judgment be entered against Defendant, HALSTED FINANCIAL SERVICES, LLC, for the following:

54. Statutory damages of $1,000.00 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k;

55. Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; and

56. Any other relief that this Honorable Court deems appropriate.

## COUNT II:
## DEFENDANT VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT

57. Claimant fully incorporates and re-alleges paragraphs one (1) through fifty-one (51) as if fully set forth herein under Count II of Plaintiffs' Complaint.

58. Defendant's conduct violated the TCPA by:

    a. Placing non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system and/or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

WHEREFORE, Plaintiffs, JOSHUA NUTT and ERIN NUTT, respectfully request judgment be entered against Defendant, HALSTED FINANCIAL SERVICES, LLC for the following:

59. As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs are entitled to and request $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. As a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs are entitled to and request treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

61. Plaintiff is entitled to and seeks injunctive relief prohibiting such conduct in the future.

62. Any other relief that this Honorable Court deems appropriate.

DATED:  April 5, 2019

Respectfully submitted,

By:  /s/Sharon D. Cousineau
Sharon D. Cousineau
SAMWEL COUSINEAU, PC
700 West Evergreen Blvd.
Vancouver, WA 98660
Tel. 360-750-3789
Fax 360-750-3788
sdcousineau@gmail.com